UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

LAKE COUNTY GRAPEVINE NURSERY
OPERATIONS,   No. 10-12578

Debtor(s).
_____/

Memorandum on Motion to Dismiss
_____

     Until December 17, 2007, Joachim Hollerith and Eckhard Kaesekamp each held a 50% membership interest in American Nursery LLC. American Nursery was involved in a business relationship with Lake County Grapevine Nursery LLC ("LCGN") and Lake County Grapevine Nursery Operations LLC ("LCGNO"), now both Chapter 11 debtors in possession. American Nursery marketed and sold grapevines produced by LCGN and LCGNO in return for a percentage commission of each sale. Nevada Viewpoint West, Inc. ("NVWI"), through its owner John Fanscy, had an investing role in LCGN and LCGNO.

     In 2007, the business relationship grew strained. After mediation, American Nursery, Hollerith, Kaesekamp, NVWI, and the Debtors entered into a Settlement Agreement, effective December 17, 2007. Under the Settlement Agreement, LCGNO obtained American Nursery's customer accounts and a non-compete agreement from Hollerith, who became the sole member of American Nursery. In exchange, Kaesekamp and NVWI, via LCGN and LCGNO, agreed to pay Hollerith $1,050,000, in the form of an up-front payment of $250,000 and monthly installments of

$16,666.67 from March 2008 to February 2012. If LCGN and LCGNO failed to cure any default on fifteen days' notice, Hollerith had the right to accelerate the balance of their payment obligations.

As security for the Settlement Payment, Kaesekamp and NVWI pledged their membership interests in LCGN and LCGNO to Hollerith, as evidenced by a Pledge Agreement. If LCGN and LCGNO defaulted on their payment obligations, the Pledge Agreement automatically cut off Kaesekamp and NVWI's voting and distribution rights in LCGN and LCGNO, and vested those rights in Hollerith. The Pledge Agreement also gave Hollerith the option to (a) take possession of Kaesekamp and NVWI's membership interests or (b) sell those interests at a public or private sale.

In October 2009, LCGN and LCGNO filed suit against Hollerith and American Nursery for breach of the Settlement Agreement and fraud. The case was removed to the Northern District of California on October 14, 2009. On October 20, 2009, the District Court issued a preliminary injunction preventing Hollerith from (a) taking possession of Kaesekamp and NVWI's membership interests in LCGN and LCGNO or (b) selling those interests at a public or private sale. The injunction does not affect the other provisions of the Pledge or Settlement Agreement.

On July 7, 2010, LCGN and LCGNO filed voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code, signed by Kaesekamp as controlling member of the entities. Hollerith has moved the court for dismissal of both cases on the grounds that Kaesekamp lacked authority to file petitions for relief on behalf of LCGN and LCGNO .

A person filing a voluntary petition for bankruptcy on behalf of a business entity must be duly authorized to do so. *Price v. Gurney*, 324 U.S. 100, 106 (1945). If the person lacks authority, the court has no alternative but to dismiss the petition. *Id*. State law generally determines who has authority to file a bankruptcy petition. *Id.* at 106-07.

The issue here is whether a pledge of an equity interest is self-executing as to voting rights or whether state law regarding formal transfer of voting rights must be followed. In the absence of specific state law requiring further proceedings to obtain the voting rights, courts generally conclude that the occurrence of a default is sufficient to trigger the transfer of voting rights to the pledgee. See

*In re Tominaga,* 325 B.R. 653, 658-59 (Bankr.W.D.Fla.2005)*; In re Heidel House Enters., Inc.*, 40 B.R. 932 (Bankr.W.D.Wis.1984). However, when there is a state law courts generally require that the right to vote be actually transferred on the records of the entity before authority to vote is lost. See, e.g., *Hickory Point Ind., Inc. v. Hickory Holding Corp.* (*In re Hickory Point Ind., Inc.*), 50 B.R. 303 (Bankr.M.D.Fla.1985) (record shareholders have right to authorize bankruptcy filing where shares have not been transferred as required by state law).

The court believes that the proper rule of law is that the occurrence of a default is sufficient to transfer voting rights unless state law provides otherwise. The court must therefore look to California statutes in order to resolve the issue.

This dispute is governed by § 17150 and § 17301(c) of the California Corporations Code. The former provides that a limited liability company shall be managed by its members unless its articles of organization provide otherwise. The latter provides that "The pledge of, or granting of, a security interest, lien or other encumbrance in or against any or all of the membership interest of a member shall not cause the member to cease to be a member or to grant to anyone else the power to exercise any rights or powers of a member."

Read together, the two statutes make it clear that when membership rights are pledged as collateral the pledging member retains the voting rights until the secured creditor has enforced the security agreement and become the member. Thus, neither the pledging of the membership rights as security nor the declaration of a breach by the secured party is sufficient to divest the pledging member of the right to vote. To hold otherwise would permit someone who is not a member or manager to control a limited liability company.

There is of course some temptation to grant the motion to dismiss, as there are ample indications that this Chapter 11 case was filed in an attempt by Kaesekamp and NVWI to maintain control of the debtor notwithstanding their breach of their agreements. However, a rule allowing dismissal for the reasons stated in the motion would create confusion and disputes over the legitimacy of filings whenever an ownership interest in the debtor has been pledged as security. Such uncertainty

3

is avoided by a clear rule: only the members or lawful managers are entitled to vote on behalf of a limited liability company, notwithstanding a pledge of membership rights as collateral.

That does not mean that Hollerith is without remedies. The court is quite willing to entertain a motion pursuant to § 305(a) of the Bankruptcy Code seeking to stay Chapter 11 proceedings until Hollerith has taken the proper steps to replace Kaesekamp and NVWI as members. Time for such a motion may be shortened as necessary. In the meantime, the court doubts that the debtor's proposed plan can be confirmed due to its elimination of membership interests and is quite willing to make such orders as are necessary to remind debtor's counsel that he represents the estate only and may not, by action or inaction, assist Kaesekamp and NVWI in their bid to retain control of the debtor. These are matters for further hearing.

For the foregoing reasons, the motion to dismiss will be denied, without prejudice to other remedies or to a motion to dismiss on other grounds. Counsel for the debtor shall submit an appropriate form of order approved by counsel for Hollerith.

Dated: November 30, 2010

                                                       Alan Jaroslovsky
                                                       U.S. Bankruptcy Judge